CUTRER, Judge.
The sole issue presented in this appeal is whether the evidence would justify the trial court’s judgment granting the husband a divorce on the ground of the wife’s adultery.
Lewis Wilson filed suit for divorce on the ground that his wife, Arlene Wilson, had committed adultery. The defendant denied the allegations of plaintiff’s petition and reconvened for a divorce on the ground of adultery and, in the alternative, for separation on the ground of cruelty. After a hearing, the trial court rendered judgment granting the plaintiff-husband a divorce on the ground of defendant’s adultery. The defendant’s reconventional demand was dismissed.[1] Defendant appeals. We affirm.
At the trial of this matter, three witnesses testified. These witnesses were all stationed at England Air Force Base near Alexandria, Louisiana.
The plaintiff, a staff sergeant, was an instructor for crew chiefs at the base. He testified that he and his wife were residing in Pineville until approximately October *994 1982, at which time they separated. The plaintiff moved to the base and his wife continued to live in the house along with their six-year-old son, Lewis Eric.
As Christmas 1982, approached, plaintiff had purchased some toys for his son. On the night of December 21st, the defendant had called him and told him that she was going home (to Alabama) for Christmas. In order to get the toys to the child, plaintiff asked Staff Sergeant, David Kramer, to drive him to the wife’s residence early the following morning. At approximately 6:30 A.M., the plaintiff arrived at the wife’s residence. After he knocked on the door, there was a delay before defendant opened the door. The defendant finally opened the door and plaintiff entered with his package of toys. When he told her that he was going to the bathroom she questioned his going to the back of the house. After some discussion on this point, plaintiff went into the bedroom and looked in a closet. His testimony as to what he saw was as follows:

“I saw this John Belford standing in the closet with his shoes in his hand, his shirt, and he had his pants slipped on and they wasn’t even buttoned up yet. He stood there and I said, ‘Well, why don’t you come on out the closet’ and then he came out and I asked him, I said, ‘Well, what’s happening?’

[[Image here]]

Q He didn’t have his shoes on?

A No shoes.

Q And he had no shirt on?

A No shirt.

Q His pants were unbuttoned?

A Yes.

Q But he had pulled them on?

A Yes.

Q And you found him hiding in the closet?”

John Belford came out of the closet and, after some exchange of words, the plaintiff went out to Kramer’s car and asked him to go into the house in order that he could be a witness to the situation. Kramer went into the house. By this time Belford was sitting on a couch with the child.
Sergeant David Kramer was a friend of plaintiff’s and also knew defendant. He stated that he went into the house with plaintiff and he saw Belford sitting on the couch with the child. He was only wearing a pair of pants. Kramer stated that words ensued causing him to become a little “edgy.” He then went back to his car. After about five or ten minutes, the plaintiff and Belford walked out of the house and Belford asked Kramer if he could ride to the air base with him. Belford was carrying a small handbag and had gotten dressed for the ride to the air base.
John Belford testified that the first time he had met defendant was in the “pub” at the air base. He stated that, during the afternoon before the incident in question, defendant was in the “pub” drinking beer and talking to Belford’s boss about her troubles. Later that day, Belford took defendant home in his boss’ truck. On the way to her house, defendant told Belford more of her troubles and expressed concern that the child may not get any toys for Christmas. After this discussion, Belford stated that he felt sorry for defendant and purchased toys for the child.
The following morning, at approximately 6:30, Belford stated that he got a friend to drive him to defendant’s house to deliver the toys. Belford stated that he arrived with the toys in the handbag. Belford testified that he had been at defendant’s house about five minutes when plaintiff knocked upon the door. He stated that defendant was dressed in a nightgown and robe. He denied being in the closet of the bedroom and denied being undressed. Bel-ford was the only witness to testify on behalf of the defendant. The defendant did not appear for trial.
After hearing these three persons testify, the trial judge, in oral reasons for judgment, stated as follows:

“Mr. Wilson has testified. Sgt. Kramer has testified. The alleged paramour John Belford has testified and that’s about the testimony that I’ve got 
*995
before me. There’s no question apparently the marriage was in the middle of a breach, the parties had separated, which is not germane really to what I’ve got to decide today and there’s little question equally that I have a credibility decision that obviously had to be made. Mr. Wilson said that Mr. Bel-ford was in the closet, was not dressed, pants unzipped, no shirt and no shoes.

“Mr. Belford said he never got out of the living room and there’s other inconsistencies I think perfectly obvious to all of us.

“To resolve the difference since I’m dealing with the two men, I look to Sgt. Kramer’s testimony. Sgt. Kramer was about as sincere as he could be and actually didn’t want to get involved and I think that was very obvious. He’s called into the house by Mr. Wilson, he sees Mr. Belford there without shoes, without shirt. He sees Mr. Bel-ford later dressed get in the car, rides back to the base with a duffle bag or gym bag I think was the words which he used or a clothing bag of some sort in any event. He has no reason to mislead the court."

Based upon this evidence the trial court rendered judgment granting plaintiff a divorce on the ground of adultery.
Plaintiffs ease had to be presented and decided on the basis of circumstantial evidence. Circumstantial proof of adultery requires production of evidence which fairly and necessarily justifies and supports the conclusion that adultery was committed. Stewart v. Stewart, 422 So.2d 1370 (La.App. 1st Cir.1982). The trial judge found that such evidence was presented. After discussing the evidence, the trial court stated, “the tilting factor is the dress ... the time ... the conduct.” Mr. Belford’s dress, his carrying a clothing bag, and the early morning time are compelling indications of his having an adulterous relationship with defendant. These fact determinations by the trial judge are entitled to great weight on appeal and will not be disturbed on appeal unless manifest error is shown. Morris v. Morris, 336 So.2d 254 (La.App. 1st Cir.1976). Where there is conflict in testimony, as in this case, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review.
After a review of the record we cannot say that the trial court was clearly wrong.
For these reasons the judgment of the trial court is affirmed. Costs are assessed against defendant-appellant, Arlene McLaughlin Wilson.
AFFIRMED.

. The defendant does not argue on appeal the dismissal of the reconventional demand. Thus we will only make a determination of the sufficiency of the evidence in the plaintiffs main demand.